**\*\*E-filed 4/9/12\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PERDANA CAPITAL (LABUAN) INC., a Malaysian corporation,<br><br>Plaintiff,<br>v.<br><br>MOHAMMED AKRAM CHOWDRY, an individual; HI-TECH VENTURE PARTNERS, LLC, a Delaware Limited Liability Company; HI-TECH ASSOCIATES, a California Limited Liability Company; and DOES 1-50,<br><br>Defendants.<br>_____/ | No. CV 09-01479 RS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

In this breach of contract action between business partners, plaintiff Perdana Capital accuses defendant Mohammed Akram Chowdry, and two companies he controls, Hi-Tech Venture Partners (HTVP), and Hi-Tech Associates (HTA) of concealment, fraud, breach of contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. Chowdry and the Hi-Tech defendants separately move for summary judgment, arguing that Perdana's various claims are barred by the applicable statute of limitations, among other doctrines. Perdana opposes

1 summary judgment with respect to Chowdry and HTVP, but not as to HTA. The parties have fully
2 briefed and argued defendants' motions. In consideration thereof, and for the reasons explained
3 below, summary judgment must be granted on all claims.

## II. FACTS

Perdana Capital is a Malaysian corporation, funded almost entirely by the government of Malaysia. Its parent company, Kumpulan Model Perdana Sdn Bhd (KMP) was founded by the Malaysian government to promote technological development, technology transfers, and business opportunities for Malaysian firms and individuals, particularly in the field of microchip design. KMP created Perdana to advance these goals within Silicon Valley. On May 12, 2004, Perdana entered into a Partnership Agreement with defendant Mohammed Akram Chowdry, and the company he controls and owns, defendant HTVP. Additionally, the parties entered into a side Letter Agreement on May 28, 2004, confirming certain terms.[1] Under these agreements, Perdana was to invest $25 million, by installments, in a new venture capital fund, Hi-Tech Venture Capital (HTVC). According to the Partnership Agreement, HTVP became general partner of HTVC, and Perdana and Chowdry were to be limited partners. The agreement contemplated admission of a second general partner into the partnership, which never came to fruition. The Partnership Agreement also authorized HTVP to enter into a Management Agreement for the provision of administrative and supporting services to HTVC. Chowdry, signing for both parties, retained HTA for this purpose.

According to Dr. Omar Abdul Rahman, who was an officer of KMP and a director of Perdana at the time, prior to formation of the partnership, Chowdry was also informed that he would be required to prepare quarterly reports detailing investment opportunities, post-investment data, fundraising efforts, and market conditions. According to Rahman, the Malaysian government and Ministry of Finance required such reporting as a condition of public investment in HTVC. The Partnership Agreement itself expressly required HTVP, as general partner, "to keep complete and

---

[1] Both parties lodge various objections to portions of the submitted declarations, as well as to other evidence. As this Order does not rely on the allegedly objectionable evidence, there is no need to rule on its admissibility. The motions are denied as moot. Defendants have also requested judicial notice of the FAC and a prior discovery-related Order in this action. There is no need to take notice of documents that appear on the record; the motion is therefore denied.

accurate Partnership books and records," and to provide any requesting partner reasonable access to the same. Exh. 1 (Partnership Agreement) to Kouri Decl. in Supp. of Pl.'s Opp'n, at 35-36. The Agreement also required that each partner be provided with annual, audited financial reports, *id.* at 36, and that the general partner hold annual partnership meetings "to review the operations and results of the Partnership." *Id.* It further required the manager of HTVP to "devote substantially their full time to carrying out the affairs of the Partnership," with the caveat that the general partner may conduct business with other companies "provided that these activities do not conflict or interfere" with the partnership's activities. *Id.* at 20. Under the associated Management Agreement, HTA was delegated the "tasks of identifying and investigating investment prospects, recommending investment decisions, executing investments decisions…," as well as "maintain[ing] the books and records" of the partnership. Exh. 2 (Management Agreement) to Kouri Decl. in Supp. of Pl.'s Opp'n, at 1.

According to Perdana, although Chowdry received significant remuneration, he never satisfied these duties, and on July 14, 2008, Perdana served Chowdry and HTVP with a memorandum stating the grievances that underlie this lawsuit, and dissolving the partnership. According to that memo and the FAC, Chowdry and HTVP failed to devote full time to HTVC, did not provide quarterly or annual reports to the partners, neglected to maintain complete and accurate records, and failed to hold annual partnership meetings, among other shortcomings. FAC ¶¶ 23, 42, 61. Perdana avers that Chowdry also failed to make required capital contributions to HTVP, failed to invest in companies which would have advanced the partnership's development objectives, and instead invested partnership funds in his son's company, SST, without obtaining a conflict-of-interest waiver. *Id.* In sum, according to Perdana, despite numerous requests for reporting on the partnership's activities and finances, "Chowdry did not respond, and for the most part, no one knew where he was or what he was doing." Pl.'s Opp'n, at 5:16-17.

Perdana also alleges Chowdry concealed that he had been held civilly liable for fraud in litigation before this Court, and involved in other employment-related litigation; facts which, had they been known to Perdana, it contends, would have cautioned it not to enter into the partnership. Judgment was entered against Chowdry in *Hosseini v. Chowdry*, No. 90-16508, 1992 WL 16746, at

*1 (9th Cir. Jan. 31, 1992) (unpublished opinion). In a second, apparently unrelated case, Chowdry sued Mylex Corporation for breach of contract after serving as its Chief Executive Officer. Chowdry insists KMP was aware of his settlement with Mylex. For support, he refers to KMP board minutes from July 4, 2002, which note that a background investigation conducted on Chowdry by an independent investigator revealed he had settled his case against Mylex. Perdana does not disagree that it discovered this fact in 2002 but insists that it had no knowledge of the unrelated judgment in *Hosseini.* Chowdry does not deny Perdana lacked actual knowledge of *Hosseini* until recently, but, as detailed further below, emphasizes that the judgment was a matter of public record.

After Perdana notified Chowdry of its intent to dissolve the partnership, Chowdry allegedly refused to produce accounting records for 2006 to 2008, and litigation eventually ensued, to wit, this action on April 3, 2009. Perdana's operative First Amendment Complaint (FAC) asserts six claims for relief: (1) concealment and fraudulent inducement against Chowdry, (2) fraud against Chowdry and HTVP, (3) breach of contract against HTVP, (4) breach of the implied covenant of good faith and fair dealing against HTVP, (5) breach of fiduciary duty against HTVP, and (6) breach of contract against HTA. According to Perdana, it did not receive an audit of the partnership's financials for purposes of dissolution and winding down HTVC's affairs until 2010, after the instant litigation was initiated. Perdana asserts that the preliminary results of the audit confirm Chowdry and HTVP breached their obligations.

Defendants insist this suit is pretextual, and the result of changed leadership and priorities at KMP. In 2007, Rahman, who was chairman of KMP, was replaced by Mr. Dato' Ramli Abbas. According to defendants, when Ramli took control of KMP, he adopted a skeptical view of HTVC's activities, and demanded to reexamine the terms of the partnership. Defendants characterize this lawsuit, and the accompanying allegations against them, as a ruse designed by Ramli to release Perdana from the partnership, and its attendant contractual obligations to tender approximately $13 million in future capital contributions. They maintain that Rahman knew of, and acquiesced in, the operation of HTVC by Chowdry and HTVP since the beginning, in 2004. Significantly, Perdana's Federal Rule of Civil Procedure 30(b)(6) representatives have admitted in deposition that plaintiff

generally knew Chowdry "was not living up to his obligations" in 2004. Exh. E. (Rule 30(b)(6) Depo.) to Manulkin Decl. in Supp. of Defs.' Mot. for Summ. J., 198:20-199:1. More specifically, plaintiff's representatives have unequivocally confirmed the company knew Chowdry was not devoting full time efforts to HTVC, not endeavoring to raise capital, not providing annual reports or maintaining accurate records, not holding partnership meetings, not performing as required by the investment guidelines, not attempting to obtain a conflict-of-interest waiver concerning his son's firm, and not making efforts to bring in a second general partner, all in 2004 or 2005. *Id.* at 193:8-22 (not full time), 211:17-212:4 (not raising capital), 192:15-193:5 (not reporting finances), 212:5-18, 215:16-25, 216:1-8, 18:12-219:7 (not keeping records), 216:9-20 (not holding board meetings), 192:6-14 (not following investment guidelines), 109:4-15, 216:21-217:7 (no conflict waiver), 211:13-16 (not recruiting general partner). Plaintiff's FAC itself is consistent with this account. For example, it avers:

> In May 2004, after the Agreement was entered into … Chowdry immediately began to obfuscate his activities from Rahman and others. Despite his representations to the contrary, he repeatedly failed to provide Perdana Capital any information regarding the various investments he had made with venture capital funds. On various occasions, Rahman and others called Chowdry and requested access to financial records, and Chowdry denied each request.

FAC, ¶ 48(a). *But see* FAC, ¶¶ 47(a) ("Since 2006, Chowdry/HTVP have not produced a single annual financial quarterly report on behalf of HTVC").

Again relying on Perdana's Rule 30(b)(6) representative's deposition testimony, defendants maintain Perdana has not suffered any cognizable damages as a result of the allegations underlying its various claims. While the record reflects that Perdana's Rule 30(b)(6) representative repeatedly admitted ignorance with respect to the extent of damages, Perdana has adduced some evidence, in the form of forensic audits, that it has indeed suffered damages, including lost alternative investment opportunities, business expenses related to the partnership, funds allegedly misappropriated and co-mingled by Chowdry, capital contributions owed by Chowdry, and now litigation expenses.

III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Celotex*, 477 U.S. at 323. A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255.

The parties agree that claims arising out of the Partnership Agreement are governed by Delaware law since HTVC was formed under that state's law, and the Partnership and Letter Agreements contain a Delaware choice-of-law provision. *See, e.g., Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992) (choice-of-law clause governs claims for alleged breaches of implied covenant of good faith and fair dealing and fiduciary duty that arose out of contractual relationship). Under Delaware law, a three-year statute of limitations applies to claims of fraud, breach of contract, breach of the implied covenant, and breach of fiduciary duty.[2] *See* 10 Del. C. § 8106. *Accord Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006) (fraud). *Wal-Mart Stores, Inc. v. AIG Life Ins., Co.*, 860 A.2d 312, 319 (Del. 2004) (contract, fiduciary duty). Under § 8106, claims accrue at the time of the wrongful act, "even if the plaintiff is ignorant of the cause of action." *SmithKline Beecham Pharms. Co. v. Merck Co., Inc.*, 766 A.2d 442, 450 (Del. Supr. 2000) (quoting *In re Dean Witter Partnership Litig.*, No. Civ. A. 14816, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998)).

---

[2] Although Perdana invokes California Civil Code § 1710 as the basis for its fraud claim, *see* FAC ¶ 57, in briefing defendants' motions, it appears to assume that Delaware law actually controls. In any case, a three-year statute of limitations would likely also apply under California law. Cal. Code of Civ. P. § 338(d).

Under limited circumstances, however, the three-year limitations period may be subject to exception. "Such tolling exceptions include the doctrines of (1) fraudulent concealment, (2) inherent unknowable injury, and (3) equitable tolling." *Krahmer*, 903 A.2d at 778. "Each of these doctrines permits tolling of the limitations period where the facts underlying a claim were so hidden that a reasonable plaintiff could not timely discover them." *In re Dean Witter*, 1998 WL 442456, at *5. Plaintiff bears the burden of establishing their applicability, and relief extends only until plaintiff is put on inquiry notice. *In re Tyson Foods*, *Inc.*, 919 A.2d 563, 584-85 (Del. Ch. 2007) (citations omitted). Should one of the foregoing doctrines apply, "the statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery" of the harm, and hence the claim. *Wal-Mart Stores v. AIG Life Ins., Co.*, 860 A.2d 312, 319 (Del. 2004); *In re Tyson Foods, Inc.*, 919 A.2d at 585 ("no theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong").

## IV. DISCUSSION

1. Concealment and fraudulent inducement

Perdana's first claim for relief alleges Chowdry concealed his involvement in the *Hosseini* and Mylex litigation, and thereby fraudulently induced plaintiff to enter into the partnership, and make investments in HTVC. Perdana claims that Chowdry failed to disclose the existence of either matter during negotiations to create HTVC, and afterward, even though he knew the information was material to Perdana's decision to enter into a partnership with him. Perdana further alleges Chowdry deliberately hid the truth, although there are no facts to suggest he took any affirmative action to conceal the existence of *Hosseini* or the Mylex case. According to Perdana, it would never have formed HTVC with Chowdry had it known of such prior litigations.

As an initial matter, in their briefing, the parties appear to assume Delaware code and case law governs all of Perdana's claims. While this is surely the case for Perdana's claims arising under the Partnership Agreement, it is perhaps less self-evident that Delaware law controls Perdana's first claim for relief, given that the FAC cites California law, and that the alleged concealment occurred

*before* the parties entered into the partnership. *See* FAC ¶ 35 (alleging concealment under California Civil Code § 1710). The key issue is thus whether a *prospective* partner, as was Chowdry at the time of the alleged concealment, has a fiduciary's affirmative duty to disclose. As discussed further below, under Delaware law, there is no pre-partnership fiduciary duty. *Leung v. Schuler*, No. 17089, 2000 WL 264328, at *5-6 (Del. Ch. Feb. 29, 2000). Under California law, by contrast, a fiduciary relationship can arise during negotiations for partnership. *Solomont v. Polk Development Co.*, 245 Cal. App. 2d 488, 495 (Cal. App. 1966). Here, Chowdry's fiduciary duty ultimately arises from the Partnership Agreement, and thus, under Delaware law. It would be an odd result, if, pre-partnership, Chowdry was under a fiduciary duty per California law, but once the agreement was signed, his duty sounded under Delaware law. As a result, and because Perdana has not developed any argument to the contrary, the premise that Delaware law controls may be accepted for purposes of this case.

Under Delaware law, to establish a *prima facie* case of fraudulent concealment, plaintiff must show: "(1) Deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) That the defendant acted with scienter; (3) An intent to induce plaintiff's reliance upon the concealment; (4) Causation; and (5) Damages resulting from the concealment." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987). Fraudulent inducement is analyzed like common law fraud in Delaware, and as applied here, that alternative theory does not substantively alter what plaintiff must prove to recover. *Duffield Assoc., Inc. v. Meridian Architects & Eng., LLC*, No. S10C-03-004, 2010 WL 2802409, at *4 (Del. Super. July 12, 2010) (citing *Stephenson v. Capano Development Co.*, 462 A.2d 1069, 1073 (Del. 1983)).

There is no dispute that KMP discovered the Mylex settlements prior to entering into the partnership agreement with Chowdry. Thus, to the extent Perdana's first claim for relief is predicated on Chowdry's concealment of the Mylex litigation, it fails. Obviously, Chowdry cannot be held liable for concealing a fact known to Perdana. With respect to the *Hosseini* case, there is no dispute that Perdana's due diligence failed to reveal that judgment before the partnership was formed. There is also no suggestion that defendant affirmatively denied the existence of the litigation. Chowdry, in effect, made no express representations concerning his litigation history.

Although Perdana hired an independent investigator to carry out a background check on Chowdry, as well as outside counsel to conduct a litigation search, neither inquiry uncovered *Hosseini.* Instead, Perdana gained actual knowledge of the judgment in 2008, after the instant dispute began to unfold. Neither party disputes these facts; instead, both advance legal arguments based on that factual premise.

Chowdry insists Perdana was on constructive notice of *Hosseini* because the case was a matter of public record. He also maintains that because Perdana did not directly question him about judgments or outstanding litigation, he was under no affirmative duty to disclose the judgment. In support of his position, Chowdry invokes a Delaware case, *Airborne Health, Inc. v. Squid Soap, LP*, No. 4410, 2010 WL 2836391, at *7 (Del. Ch. July 20, 2010). There, defendant Squid Soap negotiated to purchase certain assets from Airborne Health. When Airborne brought suit seeking a declaration it had performed on the contract, Squid Soap filed counterclaims for fraud and misrepresentation, based on Airborne Health's failure to disclose that it had recently settled with the Federal Trade Commission, Attorneys General in thirty-two states, and private plaintiffs. *Airborne Health,* 2010 WL 2836391, at *7. As the opinion notes, there are three theories of common law fraud that could conceivably apply: (1) affirmative falsehoods, (2) active concealment, and (3) silence in the face of a duty to speak. *Id.* (citing *Metro Commc'n Corp. BVI v. Advanced MobleComm Tech. Inc.,* 854 A.2d 121, 143 (Del. Ch. 2004). The first two theories are just as inapplicable to this case as they were in *Airborne Health*. There, the accused party did not deny the existence of litigation, or "make any more general, but still inaccurate statement about the type of litigation it faced." *Id.* at *7-8. Airborne Health said, in effect, nothing. *Id.* Likewise, Chowdry did nothing actively to conceal the existence of the settlements. The question is thus whether Chowdry's silence amounted to a breach of his duty.

No liability attached in *Airborne Health*. As Chowdry stresses, the Chancery Court found it significant that the litigation against Airborne was a matter of public record, and that Squid Soap neglected to conduct a litigation search before purchasing the assets, *id.* at *8, but the opinion does not go so far as to hold that liability for concealment may never attach for failure to disclose matters of public record. Rather, as Perdana correctly emphasizes, Airborne ultimately escaped liability

1 because the parties were engaged in an arms-length negotiation over a purchase of assets, and as a
2 consequence, it was under no affirmative duty to speak. *Id.* at *9-10. Here, by contrast, Perdana
3 and Chowdry were negotiating to enter into a fiduciary relationship. It is, of course, settled law that
4 partners owe a fiduciary duty of "complete candor" to each other, including an affirmative
5 obligation to speak. *Lonergan v. EPE Holdings LLC*, 5 A.3d 1008, 10023 (Del. Ch. 2010) ("in the
6 limited partnership context, absent contractual modification, a general partner owes fiduciary duties
7 that include a 'duty of full disclosure'"). As noted above, however, the Delaware courts hold that
8 fiduciary obligations do not predate the relationships that give rise to them. *Leung*, 2000 WL
9 264328, at *5-6 ("It is well established in Delaware that to successfully state a claim for breach of
10 the fiduciary duty of disclosure, the plaintiff must have been owed a fiduciary duty at the time of the
11 alleged breach"). *Accord Sanders v. Devine,* No. Civ. A. 14679, 1997 WL 599539, at *5 (Del. Ch.
12 Sept. 24, 1997) (same). *See also Umback v. Carrington Investment Partners*, No. 08-00484, 2009
13 WL 413346, at *9 (D. Conn. Feb. 18, 2009) (applying Delaware law to find the same).

14       In *Leung*, for example, plaintiffs brought class claims against Ventana's Medical Systems'
15 board of directors, on behalf of investors who eventually became shareholders through a merger.
16 2000 WL 264328, at *1. Plaintiffs alleged that in the course of consummating the merger, the
17 directors failed to disclose an issuance of stock to insiders for below-market prices.
18 Notwithstanding defendants' superior knowledge, the Chancery Court refused to find defendants
19 liable because the alleged nondisclosure occurred prior to plaintiffs' receipt of Ventana shares:
20 "plaintiff was not a stockholder at the time the prospectus was issued, therefore, *as a matter of law,*
21 there can be no liability under any fiduciary duty theories for the disclosures made in connection
22 with the offering." *Id.* at *5-6 (emphasis in original). *Leung* controls, to the extent Perdana's claims
23 focus on his failure to disclose *Hosseini* before the parties formed HTVC. Chowdry did not owe
24 Perdana any fiduciary duty prior to the formation of the partnership, and therefore was not
25 compelled to disclose the existence of the *Hosseini* judgment.

26       At oral argument, Perdana argued that Chowdry was under an ongoing duty to disclose the
27 judgment, and therefore breached his fiduciary duty by failing to do so after the partnership was
28 formed. That position, while perhaps anticipated, is not expressly stated in Perdana's pleadings.

Instead, the FAC repeatedly asserts that the concealed facts were "essential to Perdana Capital's analysis regarding the suitability of Chowdry to become the general partner," FAC ¶ 36, and that the concealment was "made with knowledge that … Perdana Capital would be induced to enter into a partnership agreement with Chowdry and invest millions of dollars over which Chowdry would have virtually limitless discretion and control." *Id.* at ¶ 37. To the extent the FAC suggests that Perdana also made investments in reliance on Chowdry's clean track record, however, those contributions were required once Perdana entered into the partnership agreement. Perdana altered its position when it entered into the agreement in the first instance, not by performing on the contract, as was required.

Although Perdana seems to suggest that its performance was not required once Chowdry failed to disclose the judgment against him, its first claim is for fraudulent concealment, not breach of contract. More fundamentally, it is not clear that the contract required disclosure, or that Perdana was excused from performance by Chowdry's nondisclosure. Perdana points to a provision in the Letter Agreement that required the partners to reveal civil fraud judgments on an ongoing basis, and argues that term also imposed a duty to disclose any past judgments. The Letter's plain language, however, appears to require disclosure of future judgments or convictions only. It reads, in relevant part: "We agree that, in the event that any of us is (i) convicted of a felony …, or (ii) found liable for civil fraud… then the one of us … shall, upon your written request: (i) immediately resign …." Exh. 2 (Management Agreement) to Kouri Decl. in Supp. of Pl.'s Opp'n, at 4. Plaintiff urges interpretation of the agreement as though it read, "in the event that any of us *was* convicted…." Of course, that is not how the agreement reads, and for obvious reasons. At the time of partnership formation, Perdana could have ascertained whether any of the relevant individuals had incurred a past conviction. In fact it did make such attempts, though it failed to uncover *Hosseini*. It is simply undisputed that Perdana did not elicit any affirmative representations from Chowdry about his record during negotiations. As a result, it would be quite a stretch to interpret the Letter Agreement as requiring as much. At most, the Letter Agreement, like Perdana's background investigation and litigation search, is some evidence of materiality. It does not by its terms give rise to an ongoing duty of disclosure as to past facts.

As defendants point out, the only case to address this question concludes that Delaware law does not support the imposition of liability for a fiduciary's ongoing failure to disclose facts that are material to the agreement creating the fiduciary relationship. In *Umbach*, the District Court, applying Delaware law, as articulated in *Leung*, found that a prospective partner could not bring a claim for breach of fiduciary duty based on alleged nondisclosures made prior to his partnership. Consistent with the foregoing analysis in this case, the court explained "there could be no breach prior to Plaintiff's investment because no fiduciary duty existed at the time." *See Umback*, 2009 WL 413346, at *9. The Court then went on to reject plaintiff's argument "that Defendants violated their fiduciary duty by remaining silent after the Agreement went into effect." *Id*. This conclusion is, again, the only sensible result. To impose liability, as plaintiff urges, on the theory that a fiduciary has an ongoing duty to disclose facts material to the formation of the fiduciary duty would be to eviscerate the general rule that there is no fiduciary duty prior to formation of the partnership agreement. That would be directly contrary to Delaware law. *Leung*, 2000 WL 264328, at *5-6.

In sum, there is no legal basis to hold Chowdry liable for his failure to disclose *Hosseini*, prior to the formation of the partnership, and Perdana has not adequately plead, nor established as a matter of law, that Chowdry was under a duty to disclose after he became a partner in HTVC. To the contrary, it appears that under Delaware law, Chowdry was not bound by a fiduciary duty before the partnership was formed, and may not be held liable for his persistent silence after the partnership was formed. Consequently, defendant's motion for summary judgment on Perdana's first claim must be granted.

2. Fraud

Perdana's second claim for relief alleges Chowdry and HTVP committed fraud by intentionally misrepresenting a commitment to fulfill the terms of the Partnership Agreement. "At common law, fraud (or deceit) consists of: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." *Stephenson*, 462 A.2d at 1074.

Plaintiff's fraud claim closely resembles its breach of contract claim.[3] The FAC alleges Chowdry falsely promised Rahman of KMP that, if HTVP were named general partner, he would, among other things, provide financial reporting, maintain HTVC's books and records, hold annual partnership meetings, perform due diligence on investment opportunities and make investments with partnership funds consistent with Perdana's objectives, and devote his full time to promoting the venture. FAC ¶ 42(a)-(g). Perdana alleges Chowdry never intended to satisfy his obligations under the Partnership Agreement, and misrepresented his plans merely to gain Perdana's consent. When he did not perform his responsibilities under the agreement, Perdana allegedly suffered significant damages. Again, because plaintiff's claims concern the representations Chowdry made around the time he entered into the Partnership Agreement, absent tolling, they began to run in May of 2004.

Without conceding fault, HTVP maintains that Perdana's claim is exhausted under Delaware's applicable three-year statute of limitations. 10 Del. C. § 8106. *Krahmer*, 903 A.2d at 778. HTVP argues that Chowdry's alleged shortcomings were known to Perdana, and Rahman of KMP in particular, shortly after the partnership was formed in 2004 and 2005, four to five years before this action was filed. As noted above, in deposition, Perdana's 30(b)(6) representatives have expressly confirmed the company knew Chowdry was not devoting full time efforts to HTVC, not attempting to raise capital, not providing annual reports or maintaining accurate records, not holding partnership meetings, not performing due diligence on portfolio companies, and not making efforts to bring in a second general partner, all by 2004 or 2005 at the latest.

Perdana does not address any of these apparent admissions in its opposition to HTVP's motion. Instead, it insists that its claims are not time-barred because Chowdry withheld information about the operation and finances of HTVC. According to Perdana, the doctrines of equitable tolling and fraudulent concealment must apply. In the tolling context, the theory of fraudulent concealment requires plaintiff to allege "an affirmative act of 'actual artifice' by the defendant that either

---

[3] The difference is that, for purposes of its fraud claim, Perdana contends Chowdry misrepresented his intention to fulfill the terms of the partnership agreements, whereas its breach of contract claim alleges HTVP failed to perform. Contrary to defendants' suggestion, the similarity is not necessarily fatal. *See, e.g., Brevet Capital Special Opportunities Fund, LP v. Fourth Third, LLC*, C.A. No. 10C-12-071, 2011 WL 3452821, at *6-7 (Del. Super. Aug. 5, 2011) ("Delaware courts have, on occasion, heard claims for both breach of contract and fraud arising from and relating to the same contract").

prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth." *In re Tyson Foods*, *Inc.*, 919 A.2d at 585. Here, Perdana identifies Chowdry's refusal to communicate as evidence of a deceitful "artifice," designed to conceal his non-performance on the contract. Whether such conduct constitutes "an affirmative act" of deceit seems debatable, and not surprisingly, the parties disagree. On the one hand, mere omissions would seem to be excluded from *Tyson*'s rubric; on the other, Perdana alleges Chowdry repeatedly refused requests for information from Rahman and others. Ultimately, that issue need not be decided however, because, as between fiduciaries, "equitable tolling stops the statute from running while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary. No evidence of actual concealment is necessary, but the statute is only tolled until the [plaintiff] 'knew or had reason to know of the facts constituting the wrong.'" *In re Tyson Foods*, *Inc.*, 919 A.2d at 585 (citations omitted). Thus, there is no need to determine whether his conduct constituted an affirmative act of deceit. The issue is, rather, whether Perdana's reliance on his silence was reasonable, or whether it knew or should have known something was amiss.

In assessing this question, the evidence that Chowdry failed to fulfill his obligations in numerous ways in the first year of the partnership cannot be ignored. Chowdry's reporting delicts, and his failure to hold regular board meetings, for example, were, by their very nature, apparent to Perdana at the time they began in 2004 and indicative of breach.[4] Perdana, after all, was a partner, and entitled to receive regular reports and attend those meetings. It is apparent from the deposition of Perdana's representatives that plaintiff also knew Chowdry was not living up to the terms of the partnership agreement in other respects. For instance, Perdana's representatives admit that his investments were inconsistent with Perdana's criteria when HTVC made its first investment, in 2005. Similarly, Perdana's 30(b)(6) deponent testified that it was evident by 2005 that Chowdry was spending significant time traveling for his own purposes, rather than advancing the partnership.

---

[4] Chowdry maintains that an officer of KMP who worked out of HTVC's office, Mohammed Hazani bin Hassan, was responsible for conveying quarterly reports to Perdana and KMP, and ensuring that HTVC complied with KMP's objectives. He also insists the partnership ultimately agreed not to require audited annual reports due to the expense, and refers to HTVC board meeting notes that appear to support his position. Exh. J (HTVC Board Meeting Notes, July 26, 2006) to Manulkin Decl. in Supp. of Defs.' Mot. for Summ. J., at 3.

The FAC does not suggest otherwise. In fact, it indicates that Perdana was of the view that Chowdry never performed as he should have under the terms of the Partnership Agreement. For example, the FAC alleges that Rahman and others repeatedly asked Chowdry for information, beginning sometime shortly after the partnership was formed, but none was forthcoming. FAC, ¶ 48(a).

Although Perdana insists Chowdry's failure to communicate prevented it from discovering that he did not intend to perform, his failure to report back regularly was itself a breach of the agreement and an indication that he was not living up to the terms of the partnership understanding. The allegation, after all, is that Chowdry misrepresented his intentions to perform under the partnership agreements when the documents were signed; plaintiff is not claiming fraud based on alleged misrepresentations that occurred during the life of the partnership. Thus, even if Chowdry was able to conceal certain aspects of the alleged misconduct by withholding access to the partnership's financial records, given the pattern of nonperformance, it should have been apparent to Perdana that Chowdry had falsely represented an intention to perform as promised shortly after the venture commenced. Indeed, plaintiff's representatives have admitted knowledge of Chowdry's alleged non-performance as early as 2004 or 2005.

It follows that, viewing the evidence in the light most favorable to Perdana, on the current record, it has not carried its burden by showing that one of Delaware's tolling doctrines ought to apply. *In re Tyson Foods, Inc.*, 919 A.2d at 585. There is no dispute that the alleged misrepresentation occurred prior to, or at the latest, at the time of, partnership formation in May of 2004. Even crediting Perdana's own account of Chowdry's misdeeds, it was, or should have been, apparent that he never intended to perform under the partnership agreements as promised a year or two later. Deposition testimony confirms that Perdana was aware of all this in 2004 or 2005. As a result, plaintiff's claim for fraud is therefore barred by Delaware's three-year statute of limitations, and HTVP's motion for summary judgment must be granted on that claim.

3. Breach of contract and breach of the implied covenant

Perdana's third and fourth claims for relief allege breach of contract and breach of the implied covenant of good faith and fair dealing against HTVP. As noted above, the facts supporting

plaintiff's breach of contract claim are substantially the same as those underlying its allegation of fraud, and the legal issues raised by the two are similar. Perdana's breach of contract and breach of implied covenant claims must also satisfy Delaware's three-year statute of limitations under § 8106. *Wal-Mart Stores, Inc.*, 860 A.2d at 319. A claim for breach of contract or of the implied covenant accrues at the time of breach, whether or not plaintiff knows of it. *Id.* at 319-20. That said, the tolling rules outlined above may also apply.

Perdana's contract claim states the following bases for liability against HTVP: (a) failure to provide regular financial reports, (b) failure to keep accurate books and records, (c) failure to hold partnership meetings, (d) failure to obtain a conflict-of-interest waiver for an investment in a firm connected to Chowdry's son, (e) failure to satisfy Perdana's investment objectives, (f) failure to seek out a second general partner, and (g) failure to devote full time to HTVC. FAC ¶ 62(a)-(g). Similarly, Perdana's claim for breach of the implied covenant is premised on the allegation that HTVP's failure to provide adequate reporting, call board meetings, and conduct performance reviews, prevented Perdana from enforcing its contractual rights. Although Perdana now further suggests, in opposing HTVP's motion to dismiss, that Chowdry and/or HTVP misappropriated partnership funds for his own personal and investment purposes, commingled those assets with personal funds, and refused to cooperate in winding down HTVC's business, those allegations do not appear, even in general form, in the FAC. Recognizing that the facts underlying these allegations may have come to light after the initiation of this suit, since then Perdana has made no apparent effort to amend its pleadings in order to include these facts or theories in the operative complaint. As a result, these allegations simply cannot form the basis of its current claims.

As for the claims that are alleged in the FAC, for the reasons stated above, there can be little question in light of the record that Perdana actually knew of HTVP's alleged breaches well before it filed suit. Again, Perdana's representatives have admitted on the record to knowledge of each and every one of the alleged breaches, by 2004 or 2005 at the latest. Perdana has neither addressed these apparent admissions nor pointed to any specific evidence of breach that HTVP was able to conceal by refusing to provide financial reports. As a result, Perdana cannot carry its burden to show that equitable tolling or fraudulent concealment applies. *In re Tyson Foods, Inc.*, 919 A.2d at 585.

Because it chose to ignore the alleged wrongdoing, and neglected to bring this suit until 2009, it is barred from proceeding by § 8106 of Title 10 of the Delaware Code. HTVP's motion for summary judgment on Perdana's third and fourth claims must therefore also be granted.

5. Breach of fiduciary duty

Perdana's fifth claim for relief alleges HTVP breached its fiduciary duties by (1) investing partnership funds in SST, a company operated by Chowdry's son, without first obtaining a conflict-of-interest waiver, and (2) assisting SST in drafting an allegedly meritless complaint against Ramli. Although Perdana attempted at oral argument to expand its fifth claim to encompass virtually all of the allegations underlying its other claims, the pleadings contained in the FAC do not sweep nearly so broadly, and again, Perdana has not made any effort to conform its pleadings to the theory of liability it now seeks to advance at summary judgment. Under the FAC's controlling description of Perdana's fifth claim, it relates only to defendant's dealings with SST. FAC ¶¶ 70-79.

HTVP maintains that this claim is also barred by Delaware's applicable three-year limitations period. 10 Del. C. § 8106. *Krahmer*, 903 A.2d at 778. In 2005, at the time of HTVC's investment in SST, Perdana unquestionably knew that Chowdry's son held a position within the company, and that Chowdry had not sought any conflict waiver from HTVC's board. Again, Perdana's representatives specifically admitted as much in deposition. Because Perdana failed to file suit for breach of fiduciary duty until 2009, some four years later, its claim, to the extent it rests on these facts, is exhausted. *In re Tyson Foods, Inc.*, 919 A.2d at 585. Perdana further accuses Chowdry, through HTVP, of conspiring with his SST's officers and attorneys to draft a meritless legal complaint against Ramli. FAC ¶ 76-77. This allegedly occurred sometime in 2008, and therefore is not time-barred. HTVP maintains, however, that Perdana has not, and cannot, show it suffered damages flowing from this alleged breach because the suit was never filed. Perdana has not specifically answered this argument, and has not adduced any evidence of damages resulting from this alleged breach of HTVP's duty. Accordingly, defendant's motion for summary judgment must be granted on this claim as well.

6. Breach of contract

HTA's motion for summary judgment is unopposed. The motion is granted, and judgment is entered in favor of HTA on Perdana's breach of contract claims against HTA.

V. CONCLUSION

For the reasons stated, defendants' motions for summary judgment must be granted.

IT IS SO ORDERED.

Dated: 4/9/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE